UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NATHAN MESSIER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WALKER MANUFACTURING )<br>COMPANY, )<br>)<br>    Defendant. ) | 2:13-cv-00040-JAW |

**ORDER ON DEFENDANT'S MOTION FOR JURY VIEW**

Concluding that the Defendant demonstrated no good reason for a field trip to Kittery, Maine, for a jury view of the scene of the accident in this personal injury products liability case, and that there is every good reason to hold the trial inside the federal courthouse, the Court denies the Defendant's motion for a jury view.

## I.   STATEMENT OF FACTS

The Complaint alleges that Nathan Messier was operating a Walker Mower on an embankment in Kittery, Maine, on April 21, 2010, when he suffered severe and permanent injuries. *Notice of Removal* Attach. 1, *Compl.* (ECF No. 1-1). The Complaint further alleges that Walker Manufacturing Company's (Walker) Walker Mower was defective and unreasonably dangerous in design and manufacture, that Walker failed to provide adequate warnings of its dangerousness, that Walker breached express and implied warranties, and that Walker was negligent in designing, testing, and manufacturing the Walker Mower. *Id.* at 1-3. In its Answer, Walker denies the essential allegations of the Complaint and asserts Mr.

Messier's own negligence as an affirmative defense. *Notice of Removal* Attach. 4, *Answer* (ECF No. 1-4).

Although the parties are still engaged in discovery, Walker filed a motion for jury view. *Mot. and Mem. in Support of Def., Walker Mfg. Co. for a Jury View* (ECF No. 11). Walker explains that the accident took place on a sloping embankment where Mr. Messier was mowing the grass and that, according to Mr. Messier, the Walker Mower bucked twice, the second time propelling him off the Mower onto his face and torso, and that the Mower ran over his legs, causing significant injuries. *Id.* at 2. Walker wishes to have the jury visit the site of the incident in order "to provide the jury with an opportunity to perceive exactly what the plaintiff had an opportunity to perceive immediately prior to the time he decided to mow the entire hillside with the Walker mower." *Id.* at 3. Walker claims that a jury view would bolster its comparative negligence defense, and that photographs, videotapes, maps, and diagrams would be inadequate substitutes. *Id.* at 5. Walker offers to arrange for transportation for the court and jury at its expense. *Id.* at 4.

Mr. Messier objects. *Pl.'s Opp'n to Def. Walker Mfg. Co.'s Mot. for Jury View* (ECF No. 12). Citing *State v. Heald*, 333 A.2d 696 (Me. 1975), he says that Walker has failed to establish that a jury view will "substantially aid" the jury in rendering a "proper decision." *Id.* at 1. He contends that photographs "paint[] a clear picture of the slope at issue in this case." *Id.*

## II. DISCUSSION

Whether to permit a jury view is "entrusted to the sound discretion of the trial court." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997). This discretion is part of the trial court's authority to decide "matters relating to the orderly conduct of the trial and the mode of presenting evidence." *United States v. Passos-Paternina*, 918 F.2d 979, 986 (1st Cir. 1990). The First Circuit has listed some factors for the trial court to consider, including "the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination [would be] permitted regarding the details of the scene." *Crochiere*, 129 F.3d at 236. Another consideration is whether the parties would be able to present other evidence of the scene "in the form of testimony, diagrams, or photographs." *Id.*

Here, the Court is not persuaded that a jury view would be appropriate. First, the weather is known to change in the state of Maine[1], and to gain the proper perspective of a grassy slope, the slope should not be covered with snow. Thus, if the Court granted the request, trial could not be held during snow season, which — depending on the year — would eliminate mid-November to late March for trial. The Court is not inclined to hold this case in abeyance waiting for the snow to melt and the grass to grow.

Second, the accident is alleged to have taken place in Kittery, Maine, about fifty miles from the federal courthouse in Portland, requiring roughly an hour of

---

[1] Neither party has described the weather conditions on the day of the accident, but it took place on April 21, 2010. *Compl.* ¶ 4. In Maine, late April is known as mud season, since it typically finds the snow melted but the ground soggy.

travel each way. To take the jury there and back would exhaust at least half a day of trial.

Third, other than saying it is so, Walker has given no reason why other means—such as testimony, photographs, videotapes, and topographic maps—could not be effectively employed to convey the slope of the lawn where Mr. Messier was injured.

Fourth, properly instructing a jury about the role of a view introduces a point of possible complication, confusion, and controversy. The old rule was that a view was not evidence but a mechanism to "facilitate contextualization of the evidence." *Clemente v. Carnicon-Puerto Rico Mgmt. Assocs, L.C.*, 52 F.3d 383, 386 (1st Cir. 1995). In *United States v. Gray*, 199 F.3d 547 (1st Cir. 1999), however, the First Circuit did away with the "blanket prohibition" on the use of a view as evidence, reasoning that "it is unrealistic to exclude a view from the status of evidence in every circumstance." *Id.* at 548. The First Circuit observed that "it is unlikely that jurors, confronted with testimonial evidence at odds with what they have seen, will apply the metaphysical distinction suggested and ignore the evidence of their own senses." *Id.* at 549 (internal punctuation omitted). *Gray* left the specifics of the new regime to be worked out in future cases:

> [T]he fact that we now regard a view to be within the category of admissible evidence not only endows a trial court with the same discretion to control its admission that the court has in dealing with all evidentiary matters, but also may in the future require special techniques and practices as experience indicates. This opinion does not purport to resolve all issues that may arise stemming from the status of a view as evidence; it simply removes the concept of a view from the highly ambiguous state of being something to consider but not

4

>evidence.  Our holding thus increases the range of admissible evidence but leaves intact the district court's authority to refuse a view in particular cases, or to exclude a view, or portions of it, from evidence when an on-the-scene observation does not transpire as the court had anticipated.

*Id.* at 550.  At the same time, the First Circuit reaffirmed that "[p]recautions . . . must be taken to minimize problems, because jury supervision is more difficult outside the courtroom."  *Id.*  The Court must, for instance, ensure that the judge is present, place limits on the interaction between counsel, the subject of the view, and the jurors, and ensure "that what transpires at the view is fully and accurately recorded, most likely by a court reporter."  *Id.*

There are other considerations as well, including the need to maintain security for court personnel, the jurors, and others, to maintain confidentiality as to internal juror conversations, and to make certain that the conditions at the scene during the view fairly show the conditions that existed on April 21, 2010.  The list of reasons for why a jury view in this case is a bad idea could go on.

In short, Walker has given no good reason for a field trip to Kittery, Maine, during this trial and there is every good reason for the trial to take place inside the federal courthouse.

### III.    CONCLUSION

The Court DENIES Walker Manufacturing Company's Motion for a Jury View (ECF No. 11).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2013

Case 2:13-cv-00040-JAW   Document 13   Filed 07/19/13   Page 6 of 6   PageID #: 50